CLAIRE B. MUNN (NOW CLAIRE BROYHILL) v. ALBERT R. MUNN, III

No. 9210DC921

(Filed 5 October 1993)

1. **Appeal and Error § 210 (NCI4th)— no certificate of service of notice of appeal in record—jurisdiction of Court of Appeals— appeal treated as petition for writ of certiorari**

    Though the Court of Appeals did not have jurisdiction of the appeal in this case because the record on appeal did not contain a sufficient certificate of service of the notice of appeal, the Court could nevertheless treat the appeal as a petition for writ of certiorari and grant the writ.

    **Am Jur 2d, Appeal and Error §§ 320 et seq.; Certiorari §§ 5 et seq.**

2. **Divorce and Separation § 122 (NCI4th)— equitable distribution—money from wife's trust—classification proper**

    The trial court in an equitable distribution action did not err in classifying half the money advanced from the wife's trust as a gift to the marital estate and the other half as a debt incurred by the marital estate, requiring repayment.

    **Am Jur 2d, Divorce and Separation § 879.**

3. **Divorce and Separation § 165 (NCI4th)— equitable distribution—rational basis**

The trial court's distribution of marital property had a rational basis where it was based on findings as to the husband's salary, earning capacity, and separate liabilities; the wife's income from her trust and past discretionary disbursements from the trust; the wife's lack of employment history and skills; the wife's need as the custodial parent to use the household effects of the marital residence; the wife's contribution of separate funds to reduction of the husband's student loans; liquidity of the parties' assets; desirability of keeping the husband's medical practice intact; post-separation payments by both parties to maintain the marital residence; reduction of marital debt by the wife's trust; depreciation of the marital residence between the parties' separation and sale of the house; the husband's use of the house after the separation; the husband's conversion of marital assets and increase of marital debts with no evidence of use for marital purposes; the wife's contribution during the marriage of at least $432,600 of separate property to the marital estate; and other findings.

**Am Jur 2d, Divorce and Separation §§ 870 et seq.**

4. **Divorce and Separation § 399 (NCI4th)— child support—ability of father to pay half**

There was sufficient evidence in the record to support the trial court's finding that appellant father, an ophthalmologist with a 1991 income of at least $88,000, was able to pay half of his children's support, or $1,300 per month, and the trial court gave due regard to the parties' estates, earnings, and conditions.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

5. **Divorce and Separation § 399 (NCI4th)— retroactive child support—father's ability to pay—sufficiency of evidence**

The trial court properly ordered appellant to pay retroactive child support for the period between the parties' separation and the date of trial where sufficient evidence existed to support the court's finding that appellant was financially able to pay half of his children's support during the time of separation.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

MUNN v. MUNN

[112 N.C. App. 151 (1993)]

Appeal by defendant from order and judgments entered 17 February 1992 by Judge Jerry W. Leonard in Wake County District Court. Heard in the Court of Appeals 2 September 1993.

*Wyrick, Robbins, Yates and Ponton, by Robert A. Ponton, Jr., Bruce C. Johnson, and Charles W. Clanton, for plaintiff-appellee.*

*W. Brian Howell, P.A., by W. Brian Howell, for defendant-appellant.*

WYNN, Judge.

[1] Preliminarily, we must decide whether we should dismiss this appeal without reaching its merits because we lack jurisdiction over it.

In *Hale v. Afro-American Arts International*, 110 N.C. App. 621, 430 S.E.2d 457 (1993) (Wynn, J., dissenting), this Court held that if the record on appeal does not contain a certificate of service of the notice of appeal, this Court does not have subject matter jurisdiction over the appeal. *Id.* at 623, 430 S.E.2d at 458. *See also Spivey and Self v. Highview Farms, Inc.*, 110 N.C. App. 719, 431 S.E.2d 535 (1993) (Cross-appeal dismissed because certificate of service of notice of appeal was not included in the record on appeal).

Here, the record on appeal contains two notices of appeal by the defendant-appellant. (R. at 108, 109). However, neither is accompanied by a certificate stating that service of this notice was made upon the plaintiff-appellee. Appellant did type a line on the bottom of the notice of appeal stating "Certificate of Service" and giving the name of the serving attorney and the date of service. However, this does not constitute adequate certification of service. The requirements of a certificate of service are well established by Rule 26 of the North Carolina Rules of Appellate Procedure. It provides:

Papers presented for filing shall contain an acknowledgement of service by the person served or proof of service in the form of a statement of the date *and manner of service* and of the names of the persons served, certified by the person who made service.

N.C.R. App. P. 26 (1992) (emphasis added). Because defendant-appellant's statement lacks a description of the manner of service, it is not a certification adequate for the record on appeal.

MUNN v. MUNN

[112 N.C. App. 151 (1993)]

Since failure to attach sufficient certification deprives this Court of jurisdiction over this appeal, we are compelled to dismiss it, unless jurisdiction can be conferred by some other means. As this Court stated in *Hale*, "If the record fails to disclose the necessary jurisdictional facts we have no authority to do more than dismiss the appeal," *citing Mason v. Moore County Bd. of Comm'rs*, 229 N.C. 626, 629, 51 S.E.2d 6, 8 (1948).

The fact that this requirement is jurisdictional carries several important implications. First, the requirement is not waivable. Jurisdiction cannot be conferred by consent, waiver, or estoppel. *In re Peoples*, 296 N.C. 109, 250 S.E.2d 890 (1978), *cert. denied*, *Peoples v. Judicial Standards Comm'n of N.C.*, 442 U.S. 929, 61 L.Ed.2d 297 (1979). Thus, the parties may not waive the requirement by demonstrating actual receipt of the notice of appeal or by appearing in court.

Secondly, the defect is not curable by amending the record. Because this Court does not have jurisdiction, we are unable to consider any motion to amend the record by adding a certification of service. *Anderson v. Atkinson*, 235 N.C. 300, 69 S.E.2d 603 (1952).

Thirdly, it is incumbent upon this Court in this and every case subsequent to *Hale* to examine each record of appeal to satisfy itself that the certificate of service of the notice of appeal is properly present. If this Court were to rule on an appeal in which the certificate were missing, we would be acting beyond the bounds of our jurisdiction.

This panel is bound by the *Hale* decision. *In re Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989). However, because of the important issues presented relating to the application of form over substance by the *Hale* decision, we have elected, as it is within our prerogative, to treat this appeal as a petition for writ of certiorari and grant the writ. N.C.G.S. § 7A-32(c) (1989); *see Jerson v. Jerson*, 68 N.C. App. 738, 740, 315 S.E.2d 522, 523 (1984).

## Facts

This appeal involves a dispute between Claire B. Munn, now Claire Broyhill, and Albert B. Munn, III, over the equitable distribution judgment and child support order and judgment entered pursuant to their divorce.

Defendant-appellant Albert R. Munn, III, and plaintiff-appellee Claire Broyhill Munn were married on May 18, 1985. They separated on August 1, 1990. For the first four years of their marriage, appellant was employed as a medical intern and medical resident in Wilmington, N.C. and then in Galveston, Texas. During these four years, the couple had two children, and appellee was not employed outside the home. Several years prior to the marriage, appellee established a trust, the Barbara C. Broyhill Trust, to be administered by her father as trustee, which contained substantial separate property. Throughout their marriage, the couple relied heavily on disbursements from this trust to support their standard of living, which required considerably more than appellant's annual internship and residency salaries of $20,000-$25,000 per year.

Upon completion of Dr. Munn's residency training in 1989, the family moved to Raleigh, North Carolina, where Dr. Munn commenced his medical practice. That same year they purchased a home in Raleigh for $735,000. The trust contributed all of the initial financing ($247,000 for the down payment and closing costs and $100,700 for renovations) and the first seventeen (17) mortgage payments ($76,168.67), for a total of $423,868.67.

The defendant appeals from the trial court's judgment for the equitable distribution of marital property, order for prospective child support, and judgment for retroactive child support.

## Trust Account Advances

[2] Appellant first contends that the trial court erred in classifying the $423,868.67 advanced from appellee's trust to the marital estate. The trial court found that half the money, or $211,934.34, was a gift to the marital estate, while the other half was a debt incurred by the marital estate, requiring repayment. Appellant argues that the entire amount was a gift to the marital estate, not a loan.

The standard of review for equitable distribution awards is set forth in *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985):

Historically our trial courts have been granted wide discretionary powers concerning domestic law cases. . . . It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. . . . A trial

court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. . . . A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

Clearly, this is a difficult standard for appellant to meet, and he fails to meet it here.

The trial court did not abuse its discretion in concluding that the money was a loan. Testimony at trial showed that appellant induced appellee's father, as trustee, to advance the money for the house by promising to repay half the funds. Testimony also showed that appellant reaffirmed his promise to pay and his promise of his ability to repay on several subsequent occasions.

This Court has held that the "any competent evidence standard" applies in an equitable distribution action, meaning the testimony of one party may suffice to support the trial court's findings as to classification. *Taylor v. Taylor*, 92 N.C. App. 413, 418, 374 S.E.2d 644, 647 (1988). It is true that the appellant put on evidence tending to show that the funds were a gift. However, as long as some evidence supported the trial court's decision, our inquiry is satisfied. "The mere existence of conflicting evidence . . . [does] not justify reversal." *Taylor v. Taylor*, 92 N.C. App. 413, 418, 374 S.E.2d 644, 647 (1988). We thus uphold the trial court's classification.

We note the inapplicability of two recent cases that have been cited to support appellant's contentions. In *Kuder v. Schroeder*, 110 N.C. App. 355, 430 S.E.2d 271 (1993), an oral contract between spouses was invalidated. *Kuder* does not apply in the present case, which involves a loan between the couple and the wife's trust, not a promise between the husband and the wife.

*Haywood v. Haywood*, 333 N.C. 342, 425 S.E.2d 696 (1993), *reversing* 106 N.C. App. 91, 415 S.E.2d 565 (1992), is also inapplicable. That case dealt with the threshold determination of whether property purchased with separate funds was marital or separate property. Here, the parties have stipulated the property was marital.

Criteria for Dividing Marital Property

[3] Defendant-appellant's second contention is that the trial court improperly applied the criteria for dividing marital property set

forth by N.C.G.S. § 50-20(c). These criteria include the parties' income, property and liabilities; the duration of the marriage and age and physical health of the parties; the need for the custodial parent to occupy the marital residence and use or own its household effects; the expectation of pension or other deferred compensation rights; contributions as a spouse, parent, wage earner or homemaker; contributions to education and career development efforts; the liquid or nonliquid character of marital property; the economic desirability of retaining professional assets intact; the tax consequences to each party; and parties' acts during the time of separation to maintain or devalue marital property. N.C.G.S. § 50-20(c)(1)-(12) (1987).[1]

In order for this Court to overturn the trial court's judgment, appellant would have to show that it was "manifestly unsupported by reason" and "so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Again, this is a difficult standard to meet, and appellant fails to meet it. The trial court is given broad discretion in evaluation and application of the § 50-20 factors. *Hartman v. Hartman*, 82 N.C. App. 167, 346 S.E.2d 196, *aff'd*, 319 N.C. 396, 354 S.E.2d 239 (1987); *Andrews v. Andrews*, 79 N.C. App. 228, 338 S.E.2d 809, *disc. rev. denied*, 316 N.C. 730, 345 S.E.2d 385 (1986).

Here, the trial court has sufficiently demonstrated the required "rational basis" for its distribution. *Nix v. Nix*, 80 N.C. App. 110, 341 S.E.2d 116 (1986). The court set forth numerous specific findings, based on evidence adduced at trial: (1) Appellant's 1991 salary, in his first full year of medical practice, was expected to be at least $88,000. He has separate liabilities of some $207,000. His liabilities as well as his present income and future earning potential, based on his past income, education, training, and skills, were factors to be considered in the distribution under N.C.G.S. § 50-20(c)(1); (2) Appellee is guaranteed a yearly income of $20,000 from her trust. She is accustomed to, but has no right to demand, discretionary disbursements from her trust. From January 1, 1985 until July 30, 1990, she received $371,458 in discretionary advances from the trust. The trust corpus, which exceeds $7 million, does not vest in appellee until after the death of her father, and then in

---

1. Section 50-20(c) was modified by the North Carolina legislature, effective October 1, 1991. However, since this case was filed on March 27, 1991, the pre-amendment law applies.

installments according to her age at the time. Her present income, future earnings potential, property interests, lack of employment history, and lack of skills were factors to be considered in the distribution under N.C.G.S. § 50-20(c)(1); (3) Appellee's need as the custodial parent to use the household effects of the marital residence was a factor to be considered under N.C.G.S. § 50-20(c)(4); (4) Appellee contributed separate funds to the reduction of appellant's student loans, which was a factor to be considered under N.C.G.S. § 50-20(c)(8); (5) The parties' assets were liquid, which was a factor to be considered under N.C.G.S. § 50-20(c)(9); (6) It was desirable to keep appellant's medical practice intact, which was a factor to be considered under N.C.G.S. § 50-20(c)(10); (7) Both parties made post-separation payments to maintain the marital residence, which was a factor to be considered under N.C.G.S. § 50-20(c)(11a); (8) Appellee's trust reduced the marital debt by $4481.37, which is a factor to be considered under N.C.G.S. § 50-20(c)(11a); (9) The marital residence depreciated by $24,000 in the nine months between the couple's separation and the home's sale, which is a factor to be considered under N.C.G.S. § 50-20(c)(11a) and/or (12); (10) Appellant used the marital residence for two months after the separation, which is a factor to be considered under N.C.G.S. § 50-20(c)(12); (11) After the separation, appellant converted $1600 of marital assets and increased the marital debt by $6000 with no evidence of use for marital purposes. This is a factor to be considered under N.C.G.S. § 50-20(c)(11a) and/or (12); and (12) During the marriage, appellee made gifts of at least $432,600 of separate property to the marital estate, which is a factor to be considered under N.C.G.S. § 50-20(c)(12).

We conclude that, based on these and other findings, the distribution had a rational basis, and we thus uphold it.

Distribution of Personal Property

Appellant's third contention is that the trial court abused its discretion in distributing the parties' personal property because it failed to consider evidence favorable to him. Once again, in order to overturn the trial court's distribution, this Court would have to find that there was no evidence to support it. *Taylor v. Taylor*, 92 N.C. App. 413, 374 S.E.2d 644 (1988). We find there is evidence to support the distribution. The trial court determined the ownership of the parties' kitchen items, dishware, wedding gifts, and furniture, and found that each party made gifts to the other of

separate personal property subsequent to the date of separation. There is sufficient evidence in the record to support these findings. Appellant himself admitted in his brief the existence of evidence supporting appellee's characterizations. He does not show that the trial court did not consider evidence favorable to him; he merely complains that the court was not persuaded by it. This does not constitute grounds to overturn the trial court.

### Determination of Child Support

[4] The trial court found the reasonably necessary and actual expenses of the children to be $1300 per child per month, totaling $2600 per month. The court ordered appellant to pay half these expenses, or $1300 per month, beginning in November of 1991.

Appellant claims that the court failed to consider the parties' incomes and wealth as required by N.C.G.S. § 50-13.4(c), and the "relative abilities of the parties to provide for payment of child support."

The appropriate level of child support is set forth in N.C.G.S. § 50-13.4:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C.G.S. § 50-13.4(c) (1987 & Supp. 1992). The trial court has considerable discretion in determining the appropriate amount of prospective child support. "Absent a clear abuse of discretion, a judge's determination of what is a proper amount of support will not be disturbed on appeal." *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985). A "judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Id.*

We find that the trial court gave "due regard" to the parties' "estates, earnings [and] conditions." *See Cohen v. Cohen*, 100 N.C. App. 334, 340, 396 S.E.2d 344, 347 (1990), *disc. rev. denied,* 328 N.C. 270, 400 S.E.2d 451 (1991). It is apparent from the record that the trial court considered both the existence and structure

of appellee's trust fund and appellant's income in making its determination. It concluded that a father in an established ophthalmologic practice, who had a 1991 income of at least $88,000, is able to contribute half of his children's support. Where "there is a finding of ability to pay supported in the record by competent evidence, that finding will be conclusive." *Wyatt v. Wyatt*, 32 N.C. App. 162, 231 S.E.2d 42 (1977). We therefore uphold the trial court's child support determination.

## Retroactive Child Support

[5] The trial court ordered appellant to pay retroactive child support in the amount of $18,200. This figure represents half the cost of supporting the children, at $1300 per month per child, during the fourteen months from the date of separation through the date of trial (September 1990 through October 1991). Appellant does not dispute the $1300 per child per month figure. However, he contends the court abused its discretion in determining that he had the ability to pay during this time.

The court carefully considered, through numerous exhibits and extensive testimony, whether appellant was able to provide support during the relevant period, as required by *Savani v. Savani*, 102 N.C. App. 496, 403 S.E.2d 900 (1991). The court found that appellant paid appellee no direct child support throughout the time of the parties' separation. The court considered the money available to appellant, including income from his medical practice, loans, and withdrawals from various accounts, and his reasonable expenses. After examining the record, we hold that sufficient evidence exists to support the court's finding that the appellant was financially able to pay half of his children's support during the time of separation. We thus uphold the trial court's order for retroactive child support.

For the foregoing reasons, the decision of the trial court is

Affirmed.

Judges JOHNSON and JOHN concur.